IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00747-WYD-KMT

JOHN FERRUGIA

    Plaintiff,

v.

CITY OF STEAMBOAT SPRINGS;
RICHARD BROWN;
GERARD GEIS;
EVAN DRISCOLL; and
ROSS BLANK,

    Defendants.

---

**ORDER**

---

I.    INTRODUCTION

THIS MATTER is before the Court on both the Defendants' motion for partial summary judgment (ECF No. 48), filed March 10, 2014, and Plaintiff's motion for partial summary judgment (ECF No. 56), filed March 14, 2014.  Responses to the motions (ECF Nos. 64 and 68) were filed on March 24, 2014 and April 7, 2014 respectively.  On April 10, 2014 and April 21, 2014, the parties filed reply briefs in support of their motions (ECF Nos. 70 and 72).

Plaintiff asserts three claims for relief in this matter: (1) False Arrest in violation of 42 U.S.C. § 1983 against Defendant police officers Brown, Geis, Driscoll, and Blank; (2) Excessive Force in violation of 42 U.S.C. § 1983 against Defendant police officers Brown, Geis, Driscoll, and Blank; and (3) Municipal Liability pursuant to 42 U.S.C. § 1983 against the City of Steamboat Springs, Colorado.  The instant motions only

concern Plaintiff's false arrest claim, the excessive force claim asserted against Defendant Driscoll, and the municipal liability claim.

In their motion for partial summary judgment, the Defendant law enforcement officers raise the defense of qualified immunity. Therefore, to survive summary judgment, Plaintiff must demonstrate that the Defendants violated his clearly established constitutional rights during the incident. After carefully considering the pleadings and relevant record, I find that the motions should be granted in part and denied in part as set forth below.

## II.     BACKGROUND / RELEVANT FACTS

Plaintiff John Ferrugia filed this lawsuit as a result of an incident that occurred on September 17, 2012, around 11:00 p.m., during which he was contacted by Defendant Steamboat Springs police officers. Officer Evan Driscoll, who was on routine patrol, observed Ferrugia inside Peak Fitness, an exercise facility located in downtown Steamboat Springs, Colorado.

While Peak Fitness is a 24-hour exercise gym, at 11:00 p.m. on September 17, 2012, no lights were on inside the building, although there was some illumination from a refrigerator unit. Through the windows, Driscoll observed that Ferrugia was wearing street clothes rather than clothes appropriate for exercise. After making eye contact with Ferrugia, Driscoll saw Ferrugia move behind a piece of exercise equipment. Driscoll called into Routt County Communications Dispatch about a possible burglary in progress at Peak Fitness. Defendants Sgt. Brown and Officer Blank arrived at the scene a few minutes later with Defendant Sgt. Geis arriving shortly thereafter.

Driscoll was familiar with Ferrugia's criminal history and had previously arrested him during an incident where Ferrugia was suspected of entering an individual's home and locking the homeowner outside. Ferrugia eventually pleaded guilty to trespass and was also charged with resisting arrest. Sgt. Brown and Sgt. Geis were also aware of this incident. Further, Sgt. Geis had several prior encounters with Ferrugia for traffic offenses, and on one such encounter, Ferrugia injured Sgt. Geis by biting his hand. As a result, Ferrugia was arrested and charged with assault on a police officer.

Once Brown and Blank arrived at Peak Fitness, Driscoll, Brown, and Blank approached the front door of the gym. Ferrugia, who was visibly upset and frustrated that the officers had approached him, came to the front door. At some point, Ferrugia opened the front door, but closed it on the officers while they were questioning him about his presence at Peak Fitness. Ferrugia told the officers that he had permission to be at Peak Fitness and was there to exercise. Ferrugia further stated that if he had contact with the officers, it would be a violation of his probation. Brown asked Ferrugia to exit the building so that officers could continue questioning Ferrugia and enter Peak Fitness to secure the gym and verify whether Ferrugia had permission to be on the premises.

After a physical confrontation with the Defendant officers involving many disputed facts, Ferrugia was handcuffed, and Brown conducted a pat-down search and removed an ID card from Ferrugia's pocket. Once Ferrugia was secure, Officer Bantle, who had just arrived at the scene, contacted dispatch in order to get in touch with the owner of Peak Fitness. Bantle verified Ferrugia's statement that he had permission to be in the gym, and Ferrugia was immediately released. Ferrugia was handcuffed for one to three

minutes.[1] Following this incident, Ferrugia went to the hospital to receive treatment for his injuries.

III.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Emp't Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the Court must] view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation marks and citation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

IV.   ANALYSIS

   A.   Qualified Immunity

The Defendants assert the defense of qualified immunity, thus, I begin my analysis with the doctrine's relevant standards. "In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate

---

[1] I note that the parties agree that significant factual disputes exist with respect to Ferrugia's excessive force claim, and with the exception of Defendant Driscoll, neither party moves to dismiss this claim on summary judgment. Accordingly, I need not include the disputed facts in this Order.

-4-

the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotations and citation omitted).  Once the affirmative defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "that the defendant's actions violated a constitutional or statutory right" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotations and citation omitted); *see also Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

Thus, in the context of a motion for summary judgment, I must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials'] conduct violated a constitutional right?"  *Holland*, 268 F.3d at 1185.  If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of the defendant[s'] unlawful conduct."  *Id.* at 1186 (internal quotations and citation omitted).  If the plaintiff successfully establishes the violation of a clearly established right, the burden then shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.  *Medina*, 252 F.3d at 1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  Here, I first address whether Ferrugia has shown that Defendants

Brown, Geis, Driscoll, and Blank violated his constitutional rights under the Fourth Amendment.

### 1. Ferrugia's Fourth Amendment Claims

Ferrugia brings claims for excessive force and false arrest under the Fourth Amendment. Defendants concede that they seized Ferrugia when they detained him on the night of September 17, 2012. Thus, the issues with respect to Ferrugia's claims are whether that seizure was reasonable and whether the Defendant officers used excessive force in detaining Ferrugia.[2] Ferrugia asserts that it was unreasonable for the officers to detain him for approximately 19 minutes and place him in handcuffs for 1-3 minutes while they verified his statement that he had permission to be inside Peak Fitness to exercise on the night of September 17, 2012. In response, the Defendants contend that their actions were reasonable under the circumstances, given (1) the late hour; (2) the fact that there were no lights on inside Peak Fitness; (3) Ferrugia's inappropriate workout clothing; (4) Ferrugia's furtive movement behind the exercise equipment after he was spotted by Driscoll; and (5) Ferrugia's criminal history with the officers.

Turning to the first step in the qualified immunity inquiry, I must determine whether "the facts alleged show the [officials'] conduct violated a constitutional right[.]" *Holland*, 268 F.3d at 1185. "The touchstone of Fourth Amendment analysis is always

---

[2] The parties agree that there are genuine issues of material fact as to whether Brown, Geis, and Blank used excessive force in detaining Ferrugia. However, based on my review of the record, there is disputed evidence whether all of the Defendant officers, including Driscoll, used excessive force. For example, Ferrugia states that Driscoll piled all of his weight on top of Ferrugia during the physical altercation. To the extent that Driscoll disagrees, this is a question of fact for the jury. I therefore deny Driscoll's motion and find that Ferrugia's excessive force claim survives summary judgment in its entirety.

the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *United States v. Oliver*, 363 F.3d 1061, 1066 (10th Cir. 2004) (internal quotation marks omitted).  The reasonableness inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations and citation omitted). The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard."  *Id.* at 395.  The test of reasonableness also "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  Thus, reasonableness is evaluated by examining the totality of the circumstances of a particular seizure.  *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005).

     Here, in analyzing the reasonableness of the Defendants' conduct in detaining Ferrugia, I must determine whether the Defendants formally arrested Ferrugia or only detained him long enough to constitute an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  In *Michigan v. Summers*, 452 U.S. 692, 699 (1981), the Supreme Court recognized that "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than

probable cause, so long as police have an articulable basis for suspecting criminal activity." *Id.* While "[e]very arrest is unreasonable unless it is supported by probable cause," an investigative *Terry* stop is reasonable when the "officer's action was justified at its inception" and "it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*; *Terry*, 392 U.S. at 20.

An investigative detention is "justified at its inception" so long as the officer reasonably believes that criminal activity is afoot. *See Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004). Turning to this matter, Driscoll spotted Ferrugia in Peak Fitness at 11:00 p.m. with the lights turned off. When they made eye contact, Ferrugia ducked behind a piece of exercise equipment, presumably to avoid being seen by the officer. Further, inconsistent with Ferrugia's statement that he was inside Peak Fitness to exercise, he was wearing street clothes, not appropriate exercise gear. Finally, and most importantly, the officers had firsthand knowledge of Ferrugia's criminal history, which included suspicion of burglary of a private residence (which resulted in a conviction for trespassing), resisting arrest, and assaulting an officer. Therefore, I find it beyond dispute that the officers possessed a reasonable suspicion of criminal activity at the outset of Ferrugia's detention.

I now turn to whether the officers' detention of Ferrugia went beyond constitutional bounds by either exceeding a reasonable scope or by constituting an arrest without probable cause. Here, the officers did not formally place Ferrugia under arrest. However, in *Manzares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009), the Tenth Circuit explained that "[a]n investigative detention evolves into an arrest when the scope of police conduct is no longer reasonably related to the circumstances initially

justifying the seizure." *Id.* "There is no bright-line rule to determine whether the scope of police conduct was reasonably related to the goals of the stop; rather our evaluation is guided by common sense and ordinary human experience." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994).

Given the totality of the circumstances, I first consider whether Ferrugia's detention lasted too long to constitute an investigative stop and whether the use of handcuffs was warranted. "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 709 (1983). Additionally, when "assessing whether a detention is too long in duration to be justified as an investigative stop," I must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly …." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Based on my careful review of the evidence, the first inquiry—the duration of the detention—points strongly in the officers' favor. The entire encounter lasted approximately 19 minutes, and Ferrugia was only handcuffed for 1-3 minutes while the officers contacted the owner of Peak Fitness. Once the officers verified that Ferrugia had permission to be inside the gym, he was released. The second inquiry—whether the use of handcuffs was warranted—also points in favor of the officers. In order to protect their safety during a *Terry*-type detention, officers may reasonably use handcuffs, draw their weapons, or force a suspect to the ground. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007). "In evaluating whether the precautionary steps taken by an officer were reasonable, the standard is objective—would the facts

available to the officer at the moment of the seizure … warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* (internal quotations and citations omitted). Here, given the totality of the circumstances I have previously discussed—the late hour, Ferrugia's clothing, Ferrugia's furtive movements, Ferrugia's agitated demeanor, and the physical altercation that had just occurred—coupled with the officers' knowledge of Ferrugia's criminal history, I find that the officers acted reasonably in placing Ferrugia in handcuffs and proceeding with caution to both secure the gym and verify Ferrugia's statements. *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (stating that officers may take steps reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop).

Based on the foregoing, I find that the officers' detention of Ferrugia was reasonably related to Driscoll's suspicion that Ferrugia was burglarizing Peak Fitness. Ferrugia has failed to meet his burden to "show with particularity facts and law establishing the inference" that the defendant's actions constituted an unlawful seizure or false arrest under the Fourth Amendment. *Hollingsworth v. Hill*, 110 F.3d 733, 737-38 (10th Cir. 1997). Thus, Defendants Brown, Geis, Driscoll, and Blank are entitled to qualified immunity on Ferrugia's claim of false arrest.

      2.    <u>Plaintiff's Municipal Liability Claim Against Defendant City of Steamboat Springs</u>

A municipality may not be held liable under § 1983 simply because it employs a person who is liable under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Instead, to find a municipality liable under § 1983 for acts of its employees, a plaintiff must establish that the municipality has a policy or custom that directly caused the constitutional violation at issue. *City of Canton, Ohio, v. Harris*, 489

U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 658). The Tenth Circuit has articulated five possible ways that a municipal policy or custom may be subject to § 1983 liability: (1) the existence of "a formal regulation or policy statement"; (2) the existence of an informal custom that is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions … of subordinates"; and (5) the "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (internal quotations and citations omitted).

Ferrugia asserts that the City of Steamboat Springs had a policy or custom that directly caused a deprivation of his constitutional rights under a ratification theory as the basis for establishing municipal liability. Specifically, Ferrugia argues that the Steamboat Springs Police Department Chief Joel Rae ratified the Defendant officers' conduct by reviewing reports prepared by Deputy Chief Robert DelValle and ultimately approving the officers' decision making and actions during the encounter with Ferrugia at Peak Fitness. "[A] municipality will not be found liable under a ratification theory unless a final decision maker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010). With respect to Plaintiff's false arrest claim however, since I find no constitutional violation, there can be no municipal liability. As to the excessive force claim, because there are disputed facts as to whether there was a constitutional

violation, at this stage of the litigation I cannot determine from the evidence submitted whether there is municipal liability with respect to the excessive force claim. Accordingly, summary judgment is entered in favor of the Defendants with respect to Plaintiff's municipal liability claim as it relates to false arrest only.

V. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' motion for partial summary judgment (ECF No. 48) and Plaintiff's motion for partial summary judgment (ECF No. 56) are **GRANTED IN PART AND DENIED IN PART** as follows:  Summary Judgment is entered in favor of the Defendants with respect to Plaintiffs' false arrest claim and the municipal liability claim as it relates to the false arrest claim.  The motions are **DENIED** in all other respects.  It is

FURTHER ORDERED that a 5-day jury trial is set for **Monday, April 20, 2015 at 8:30 a.m.**  A final trial preparation conference is set for **Tuesday, April 7, 2015 at 4:00 p.m.**  The parties are reminded to review and comply with all directives set forth in my Practice Standards with respect to trial preparation.

Dated:  September 16, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge